IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| CRUZ HERNANDEZ, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-18-CV-00055-MAT |
| | § | |
| ANDREW SAUL,[1] COMMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Cruz Hernandez ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI of the Act. (Pl.'s Compl., ECF No. 1, at 1). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff was fifty-five years old at the time of the decision of the Administrative Law Judge

---

[1] Andrew Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is now substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this case.

("ALJ"), dated December 23, 2016. *See* (R. 29, 35, 53).[2] Her past relevant work includes being a house cleaning maid and a sewing machine operator. (R. 38–39, 46–47, 197). On November 3, 2014, Plaintiff filed applications for a period of disability and DIB and Supplemental Security Income benefits, in which she alleged disability beginning on September 1, 2009, due to arthritis and back pain. (R. 153–59, 160–70). After her applications were denied initially and upon reconsideration, Plaintiff requested a hearing by an ALJ. (R. 53–59, 92–97, 98).

On September 1, 2016, a hearing was conducted before the ALJ. (R. 33–52). At the hearing, Plaintiff amended her onset disability date to September 30, 2013. (R. 21, 36). On December 23, 2016, the ALJ issued a written decision denying benefits at step two of the five-step evaluation process on the basis that Plaintiff's impairments, "considered singly and in combination, do not significantly limit [Plaintiff's] ability to perform basic work activities." (R. 28). On December 15, 2017, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision. (R. 1–8).

In this appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and results from legal error. (Pl.'s Br., ECF No. 16, at 2). Specifically, Plaintiff contends: (1) that the ALJ did not consider the combined impacts of her impairments as required by 20 C.F.R. § 404.1523 and (2) that the ALJ failed to properly develop the record and weigh the medical opinion evidence and, therefore, did not follow proper legal standards. *Id.*

## II. LAW AND ANALYSIS

A. STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and whether the

---

[2] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

Commissioner applied the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman*, 1 F.3d at 360 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.* However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.

B. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, "disability" means, in relevant part, the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This means that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

*Id.* at § 423(d)(2)(A)

The Social Security Administration Regulations (the "Regulations") prescribe a "five-step sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1) & 416.920(a)(1). If, at any step of the process, the ALJ finds that the claimant is either disabled or not disabled, the ALJ will make his determination as to disability and will not continue with a consideration of the remaining steps. *Id.* at §§ 404.1520(a)(4) & 416.920(a)(4).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* at §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). If so, the ALJ will find the claimant is not disabled and will not continue to step two. *Id.*

At the second step, the ALJ considers the medical severity of the claimant's impairment(s). *Id.* at §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). An impairment or combination of impairments is severe within the meaning of the regulations if it "significantly limits" an individual's "ability to perform basic work activities." *Id.* at §§ 404.1520(c) & 416.920(c). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." SSR 85-28, at *3 (citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). If the ALJ determines that the claimant does not have a severe medically

4

determinable physical or mental impairment or combination of impairments that meet the duration requirement, then the ALJ will find that the claimant is not disabled and will not continue to step three. *Id.* at §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii)

At the third step, the ALJ also considers the medical severity of the claimant's impairment(s), specifically whether the impairment(s) meets the duration requirement and "meets or equals one of [the] listings in appendix 1 of this subpart . . . ." *Id.* at §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). If so, the claimant will be found to be disabled, and the ALJ will not continue to step four. *Id.*

Before proceeding to the fourth step, the ALJ will make a finding as to the claimant's residual functional capacity ("RFC"), "based on all the relevant medical and other evidence" in the administrative record. *Id.* at §§ 404.1520(e) & 416.920(e). A claimant's RFC is the most she can still do despite her physical and mental limitations that affect what she can do in a work setting. *Id.* at §§ 404.1545(a)(1) & 416.945(a)(1). When assessing the RFC, the ALJ will consider *all* of a claimant's medically determinable impairments, not just ones that the ALJ determines are severe. *Id.* at §§ 404.1545(a)(2) & 416.945(a)(2).

At step four of the five-step sequential evaluation process, the ALJ considers the RFC assessment and the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) 416.920(a)(4)(iv). If the ALJ determines that, considering the RFC, the claimant can still do her past relevant work, then the ALJ will find that the claimant is not disabled and will not continue to step five. *Id.* Finally, at step five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. *Id.* at §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If the ALJ finds that the claimant cannot, then the ALJ will find that the claimant is disabled. *Id.*

5

C.  THE ALJ'S WRITTEN DECISION

In his written decision, the ALJ analyzed Plaintiff's application for disability using the five-step sequential evaluation process set forth in the Regulations. (R. 22–28). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2013, the amended alleged onset date. (R. 23). Proceeding to step two, the ALJ found that Plaintiff had the following medically determinable impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of bilateral hands; carpal tunnel syndrome; ulnar neuropathy; joint inflammation of the bilateral arms, wrists, and hands; and obesity. (R. 24). But, the ALJ found that these medically determinable impairments were not severe impairments, singly and in combination, because these impairments "do not significantly limit the claimant's ability to perform basic work activities." (R. 28). Accordingly, the ALJ determined that Plaintiff was not disabled and, therefore, did not proceed to step three, four, or five. (R. 28).

D.  WHETHER THE ALJ PROPERLY CONSIDERED THE COMBINED IMPACT OF PLAINTIFF'S IMPAIRMENTS

Plaintiff first argues that the ALJ erred by not considering the combined impact of Plaintiff's "degenerative disc disease, degenerative joint disease, carpal tunnel syndrome, ulnar neuropathy, and obesity in compliance with 20 C.F.R. § 404.1523," and thereby prematurely ended the sequential evaluation process. (Pl.'s Br., ECF7 No. 16, at 3–4). In response, the Commissioner argues that the ALJ followed 20 C.F.R. § 404.1523 when he found that the Plaintiff did not have a severe impairment or combination of impairments, because the ALJ referenced the standard throughout his decision. (Comm'r's Br., ECF No. 17, at 1–2).

Title 20 C.F.R. §§ 404.1523 and 416.923 state:

> (c) Combined effect. In determining whether your physical or mental impairment or impairments are of a sufficient medical

> severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled . . . .

*Id.* at §§ 404.1523(c) & 416.923(c). Reviewing the ALJ's decision, there is no indication that the ALJ failed to consider the combined effects of Plaintiff's impairments. The ALJ continuously references the standard under §§ 404.1523 & 416.923 throughout his decision. (R. 22–28). Accordingly, Plaintiff has not shown that the ALJ erred in this respect.

E. WHETHER THE ALJ ERRED BY FAILING TO FURTHER DEVELOP THE RECORD AND FAILING TO PROPERLY WEIGH THE TREATING PHYSICIAN'S OPINIONS

Plaintiff asserts that remand is warranted because the ALJ failed to satisfy his duty to further develop the record by not recontacting the treating physician and incorrectly giving the treating physician's opinion little weight. (Pl.'s Br., ECF No. 16, at 5–6). In response, the Commissioner asserts that the ALJ properly developed the record and weighed the medical opinion evidence, and moreover, that even if the ALJ erred, Plaintiff has not shown a legal error warranting remand. (Comm'r's Br., ECF No. 17, at 4–7).

*i. The ALJ did not err by not recontacting the treating physician.*

Plaintiff argues that the ALJ failed his affirmative duty to further develop the record by recontacting Dr. Monsivais, Plaintiff's treating physician. (Pl.'s Br., ECF No. 16 at 5–6). Plaintiff asserts that the ALJ cannot ignore a treating physician opinion without first attempting to fill clear gaps in the administrative record, and that the ALJ bears an affirmative duty to seek out more information from the treating physician to develop the record. *Id.* at 5. Plaintiff argues that because

the ALJ failed to recontact Dr. Monsivais, the ALJ failed to "follow procedures required by law." *Id.* at 6.

In response, the Commissioner argues that recontacting Dr. Monsivais is discretionary, and "only a potential consideration" when the ALJ cannot reach a conclusion on whether a claimant is disabled. (Comm'r's Br., ECF No. 17, at 7) (citing 20 C.F.R. §§ 404.1520b(c) & 416.920b(c)). The Commissioner claims that recontacting Dr. Monsivais was not necessary because the evidence as a whole was "clearly adequate to determine the issue of Plaintiff's disability." *Id.* Lastly, the Commissioner asserts that the ALJ properly developed the record by providing Plaintiff with an initial consultation examination with Dr. Eleje at government's expense, as well as obtaining testimony from Plaintiff about, *inter alia*, her age and past relevant work. *Id.* at 6–7.

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (citing *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981); *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986)); *see also* 20 CFR §§ 404.1512(b)(1), (b)(2) & 416.912(b)(1), (b)(2) ("[B]efore we make a determination that you are not disabled, we will develop your complete medical history . . . and may ask you to attend a consultative examination at government expense."). For example, "[i]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, *absent other medical opinion evidence based on personal examination or treatment of the claimant*, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012) (quoting *Newton*, 209 F.3d at 453) (emphasis in original).

The ALJ can also satisfy his duty to develop the record by questioning a claimant about, *inter alia*, her education, training, work history, daily routine, pain, and physical limitations. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). "If the ALJ fails to fulfill this duty, 'he does not have before him sufficient facts on which to make an informed decision and consequently the decision is not supported by substantial evidence.'" *Sun*, 793 F.3d at 509 (quoting *James*, 793 F.2d at 704). A court may reverse the ALJ's decision on the basis of no substantial evidence if the plaintiff can show that "(1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the [plaintiff]." *Jones*, 691 F.3d at 733. However, although the ALJ has a duty to develop the record, the ultimate burden rests with the claimant to provide evidence of her disability. 42 U.S.C. § 423(d)(5)(A).

Here, Dr. Monsivais was not the only examining physician; the medical record also includes examinations by Dr. Eleje and Dr. Ralu. *See e.g.*, (R. 250–52, 262–63). Therefore, the ALJ was not required to request more information from Dr. Monsivais. Moreover, at the hearing, the ALJ gave Plaintiff the opportunity to answer questions about her education, work history, pain, and treatment, and provided her the opportunity to talk about her daily routine. (R. 38–46). For these reasons, the ALJ did not fail to fulfil his duty to develop the record.

  ii. *The ALJ did not err in giving the treating source's opinion little weight.*

Plaintiff asserts that before the ALJ can give a treating source's opinion little weight, the ALJ must first attempt to develop the record. (Pl.'s Br., ECF No. 16, at 5–6). Additionally, Plaintiff asserts that the treating physician's opinions are generally given "considerable weight," and are also given more weight than those of non-examining physicians. *Id.* at 6. In response, the Commissioner argues that a treating physician's opinion may be given "little to no weight when good cause is shown." (Comm'r's Br., ECF No. 17, at 5). The Commissioner then asserts good

cause was given because the ALJ noted that Dr. Monsivais's medical opinion was inconsistent with his subsequent findings and the rest of the medical record. *Id.* at 5–6.

When determining disability, the ALJ will consider medical opinions from acceptable medical sources, including treating physicians, together with the rest of the relevant evidence in the record. 20 C.F.R. §§ 404.1527(a)–(b) 416.927(a)–(b). A treating source's medical opinion on the issue(s) of the nature and severity of a claimant's impairment(s) will be given controlling weight if the ALJ finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at §§ 404.1527(c)(2) & 416.927(c)(2).

When a treating source's medical opinion is not given controlling weight, the ALJ applies the factors listed in paragraphs (c)(2)(i)–(ii) and (c)(3)–(c)(6) of §§ 404.1527 and 416.927 in determining what weight to give the opinions and provides "good reasons" for the weight given. *Id.* at §§ 404.1527(c)(2) & 416.927(c)(2). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views, under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[3] *Newton*, 209 F.3d at 453 (emphasis in original). These factors include the length, frequency, nature, and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, specialization of the physician, and other factors, such as the medical source's understanding of disability programs and evidentiary requirements and the extent to which the

---

[3] The criteria that the Fifth Circuit references at subsection (d)(2) in *Newton* are currently located at subsection (c)(2)(i)–(ii) and (c)(3)–(c)(6) of §§ 404.1527 and 416.927. *Compare* 20 C.F.R. §§ 404.1527 & 416.927 (effective to July 31, 2006) *with* 20 C.F.R. §§ 404.1527 & 416.927 (effective Aug. 24, 2012 to Mar. 26, 2017) *and* 20 C.F.R. §§ 404.1527 & 416.927 (effective Mar. 27, 2017).

medical source is familiar with the other information in the claimant's case record. *Id.* at §§ 404.1527(c) & 416.927(c).

On April 1, 2015, Dr. Monsivais opined that Plaintiff had limitations lifting/carrying; standing and/or walking; pushing and/or pulling; climbing, balancing, kneeling, crouching, crawling, and stooping, reaching, handling, fingering, and feeling; and working in with certain environmental factors such as vibrations and temperature extremes. (R. 254–56). However, there is competing first-hand medical evidence contradicting Dr. Monsivais's opinions of the limitations of Plaintiff's impairments. Dr. Eleje, who completed a consultative examination of Plaintiff on December 23, 2014, found that Plaintiff had normal hand and muscle strength, and that her extremities have a "full range of motion with no evidence of active articular disease." (R. 251). The musculoskeletal examination revealed that Plaintiff had a "full range of motion, symmetric strength, normal muscle tone, no atrophy, no abnormal movements and no contractures." *Id.* Dr. Eleje opined that Plaintiff had "no limitations with sitting, standing, moving about, handling objects, lifting, carrying, hearing, speaking," and that Plaintiff's "alleged pain does not correspond to findings on examination." *Id.*

Likewise, Dr. Ralu, who examined Plaintiff on December 15, 2015, observed that Plaintiff was had normal strength in all extremities. (R. 262). Moreover, the ALJ noted that Dr. Monsivais's subsequent treatment notes were not consistent with his opinions on Plaintiff's limitations, including findings of "full range of motion and strength in [Plaintiff's] arms, wrists, and hands ad no signs of instability." (R. 26) (citing R. 257–59, 267–75). Thus, the record contains competing first-hand medical evidence contradicting Dr. Monsivais's opinions. Accordingly, the ALJ was not required to perform a detailed analysis of Dr. Monsivais's opinions under the criteria set for the regulations before giving little weight to his opinions.

11

However, even if the ALJ was required to address the factors in his written decision, it is clear from that decision that he did so. The ALJ considered all the required factors of 20 C.F.R. §§ 404.1527(c) & 416.927(c) when the ALJ gave Dr. Monsivais's opinion little weight. By recalling the timeline of treatment, the ALJ considered the first factor of physician's length and frequency of Plaintiff's treatment. (R. 26) (noting the treatment dates of February 2015 to August 2016, including treatment notes for September 2015 and May and July 2016).

The ALJ's decision also shows that he considered the second factor of the treatment's nature and extent. (R. 26) ("[Dr. Monsivais] primarily examined her arms, wrists, and hands during those appointments and treatment focused on her carpal tunnel syndrome, ulnar neuropathy, and joint inflammation of the bilateral arms, wrists, and hands."). Likewise, the record reflects that the ALJ extensively considered both the third factor of whether Dr. Monsivais's opinion is supported by the record's medical evidence, and the fourth factor of whether Dr. Monsivais's opinion is consistent with the record as a whole. *See, e.g.*, (R. 28) ("The inconsistencies between Dr. Monsivais's opinion and findings greatly undermined his opinion. In addition, Dr. Monsivais's opinion was inconsistent with Dr. Eleje's generally normal musculoskeletal or neurological and [Plaintiff's] reported abilities, discussed above.").

The fifth factor of considering Dr. Monsivais's specialization is satisfied. *See* (R. 27) (ALJ noting that Dr. Monsivais did not examine Plaintiff's back).[4] Finally, the ALJ noted that the State Disability Determination Service's ("DDS") medical consultants, who have experience assessing impairments for DDS, both determined, on review of Plaintiff's medical record, that Plaintiff had no severe impairments. (R. 28). As such, the ALJ properly considered all the required factors before giving little weight to Dr. Monsivais's opinion.

---

[4] Dr. Monsivais's specialty is hand surgery, as noted in the opinion he provided. (R. 256).

Additionally, "good reasons" were given to give little weight to Dr. Monsivais's opinion. Particularly, the ALJ focuses on the inconsistencies in Plaintiff's and Dr. Monsivais's statements. (R. 25–28). The ALJ gave little weight to Dr. Monsivais's opinion "because it was inconsistent with his subsequent examinations findings and the record as a whole." (R. 27). In a September 23, 2015 physical examination with Dr. Monsivais, he assessed decreased median nerve distributions on both of Plaintiff's hands, and positive Tinel's signs at the median and ulnar nerves on both hands. (R. 259). Dr. Monsivais also diagnosed Plaintiff with carpal tunnel syndrome during the same examination. (R. 259). However, Plaintiff showed normal strength and a full range of motion in her hands. (R. 259). Moreover, in the July 2016 examination with Dr. Monsivais, Plaintiff was found negative for carpal and cubital tunnel syndrome by electrodiagnostic testing. (R. 275). Likewise, the ALJ stated that Dr. Monsivais's opinion that Plaintiff had "significant limitations" with, *inter alia*, pushing were inconsistent with Dr. Monsivais's subsequent finding that Plaintiff retained full range of motion and strength. (R. 27–28). Lastly, the ALJ questions the basis for Dr. Monsivais's opinions as to Plaintiff's limitations due to her back condition, when there is no indication that the doctor examined Plaintiff's back. (R. 27).

The ALJ also describes inconsistencies with Plaintiff's testimony. The ALJ notes that although Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record." (R. 25). The ALJ also points out that Plaintiff's reported activities of, *inter alia*, carrying groceries and sitting in church services, are "inconsistent with the alleged limiting effects of her symptoms or alleged side-effects of her medications." (R. 27). For all of

these reasons, the Court finds that the ALJ gave "good reasons" to give little weight to Dr. Monsivais's opinion.

Accordingly, the Court finds that even if the ALJ was required to address the §§ 404.1527(c) and 416.927(c) factors, he did so as described above. Moreover, the ALJ gave "good reasons" to give little weight to Dr. Monsivais's opinion in his analysis of the inconsistencies in Dr. Monsivais's opinions and Plaintiff's self-reporting when compared to the medical record evidence, in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c).

  ii. *Even if the ALJ did err, Plaintiff has not shown prejudice warranting remand.*

Plaintiff argues that she has been prejudiced because the ALJ did not follow the correct legal standards, and thereby the ALJ prematurely ended the evaluation process. (Pl.'s Br., ECF No. 16, at 6). Plaintiff alleges that "it is likely that Dr. Monsivais could have provided sufficient reasoning to support his opinion, clarify any inconsistencies and fill any gaps." *Id.* In response, Commissioner argues that Plaintiff has the burden to show that there was prejudice, and that Plaintiff failed to meet this burden because Plaintiff has not shown that there is a "realistic possibility" that the ALJ would reach a different result. (Comm'r's Br., ECF No. 17, at 7).

Even if the ALJ erred, remand is only warranted if prejudice resulted from the error. *Jones*, 691 F.3d at 733. The party seeking to overturn the ALJ's decision has the burden to show prejudice. *Id.* at 734–35. To establish prejudice, Plaintiff must show that she "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

Plaintiff has not shown any prejudice warranting remand. Unlike the ALJ in *Kane*, who terminated the hearing after five minutes, the ALJ here ended the hearing after about 45 minutes. *See* (R. 38, 52). For the reasons previously discussed, substantial evidence supports the ALJ's decision and Plaintiff has not shown, or argued with any specificity, that it is likely that Dr.

Monsivais would have supported his opinion, clarified inconsistencies or filled gaps. Thus, Plaintiff has failed to show that there was any prejudice warranting remand.

Accordingly,

### III. CONCLUSION

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED** and **ENTERED** this 18th day of September, 2019.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE